<pre>
 1                UNITED STATES BANKRUPTCY COURT
                  NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3   IN RE:                   .    Case No. 13-73481-bem
                              .    Chapter 7
 4   BLAIR B. CHINTELLA,      .
                              .    75 Spring Street SW
 5                Debtor.     .    Atlanta, Georgia 30303
                              .
 6                            .    March 4, 2014
     . . . . . . . . . . . . . . .    2:55 p.m.
 7
       TRANSCRIPT OF HEARING ON COMCAST'S MOTION FOR RELIEF FROM
 8     STAY AND ANNULMENT, BEFORE THE HONORABLE BARBARA ELLIS-MONRO
                 UNITED STATES BANKRUPTCY JUDGE
 9

10   APPEARANCES:

11   On behalf of Debtor:         Blair B. Chintella, pro se

12   On behalf of Comcast Cable   Hawkins Parnell Thackston &
     Communications Management,     Young, LLP
13   LLC:                         By:  Carl H. Anderson, Jr. Esq.
                                  By:  Michael J. Goldman, Esq.
14                                4000 SunTrust Plaza
                                  303 Peachtree Street, N.E.
15                                Atlanta, Georgia  30308
                                  (404) 614-7400
16

17   Court Recorder:              Clerk's Office
                                  U.S. Bankruptcy Court
18                                75 Spring Street SW
                                  Atlanta, Georgia  30501
19                                (404) 215-1000

20

21

22

23

24

25
</pre>



```
1   Transcription Service:        Esquire
                                  2700 Centennial Tower
2                                 101 Marietta Street
                                  Atlanta, Georgia  30303
3                                 (404) 588-3810

4

5

6
    Proceedings recorded by electronic sound recording;
7   transcript produced by transcription service.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                      (Time Noted:  2:55 p.m.)

 2            THE COURT CLERK:  Your Honor, that brings us to

 3   the last matter from the 2:30 calendar, the case of Blair

 4   Chintella.  We have Comcast's motion for relief from stay and

 5   annulment.

 6        (Brief pause)

 7            THE COURT:  Counsel?

 8            MR. ANDERSON:  May it please the Court, my name is

 9   Carl Anderson, along with Michael Goldman.  We represent

10   Movant, Comcast Cable Communications Management, LLC.

11            We are here before the Court today on Comcast's

12   motion for relief from the automatic stay, and for annulment.

13            We are here to answer essentially two questions,

14   Your Honor:  Whether Comcast's motion for attorneys' fees in

15   the District Court is exempt under Section 362(b)(4), and if

16   it's not exempt, whether the Court should grant relief from

17   the stay, the Section 362 stay.

18            Comcast requested entry of an order confirming the

19   automatic stay does not apply to its motion for attorneys'

20   fees in the District Court, wherein, in the alternative,

21   respectfully requested the Court enter an order annulling the

22   stay or otherwise modifying or granting relief from the stay

23   to the extent necessary to permit the sanctions motion, the

24   attorneys' fees motion, to be adjudicated by the District

25   Court.
```



**2700 Centennial Tower**
**101 Marietta Street**
**Atlanta, GA 30303**

**Toll Free: 800.211.DEPO**
**www.esquiresolutions.com**

1          And Comcast moves pursuant to 11 U.S.C. 362(b)(4)

2   for such relief.

3          We filed a motion for sanctions under 28 U.S.C.

4   1927 in the District Court, as a result of the service of the

5   three subpoenas on Comcast in a case where Comcast is a non-

6   party.

7          And if it's all right with the Court, I did a

8   short chronology which does not include everything on the

9   docket in the District Court, but I thought it might help the

10  Court keep things straight.  If that's all right, may I

11  approach and --

12         THE COURT:  I assume the opposing counsel has seen

13  that?  And I will just say for everyone's edification, I have

14  looked at the District Court docket, and so I --

15         MR. CHINTELLA:  I'm sorry, you --

16         THE COURT:  I have looked at the District Court

17  docket.

18         MR. ANDERSON:  Okay, so do --

19         THE COURT:  I'd be happy to see that, but I have

20  at least scrolled through it.

21         MR. ANDERSON:  And the highlighted items are the

22  items that were filed in the Bankruptcy Court.

23         The first subpoena was served in July of 2013,

24  July 10th.  Comcast responded.

25         Because of the information requested, Comcast has



1  an obligation under 47 U.S.C. Section 551(c)(2)(B) and (H) to

2  let subscribers know that certain information has been

3  requested by another party, and to give them an opportunity

4  to object.

5          And Comcast takes that duty very seriously, and

6  has complied with that with regard to two out of the three

7  subpoenas.  I do not know whether the third subpoena served

8  on July -- on August 8th they did that or not, because in the

9  intervening time, the actual Plaintiff in the case had filed

10 a motion for protective order and a motion to quash, and

11 several other things, which Comcast sort of got sucked into.

12          During the process, there was a return date.  We

13 had contacted Mr. Chintella.  And, Your Honor, I was not

14 involved in the underlying case -- or the District Court

15 case, Mr. Goldman was.

16          So, we contacted Mr. Chintella and told him that

17 we would comply once we had gone through the necessary

18 Statutory compliance regarding notification.  Once we had

19 done that, we'd produce the items he asked for, and we

20 produced those on August 2nd.  I believe the return date on

21 the subpoena was July 31st.

22          We proceeded to do the same thing for the second

23 subpoena, but in the interim, he filed a motion for contempt.

24 He did not get a motion compelling us to produce anything,

25 and our notice period with regard to the subscribers had not



1   run in that case, and so we proceeded to basically say "we

2   cannot produce this information without a court order," and

3   he filed for contempt rather than ask for a court order

4   asking us to produce it pursuant to the applicable Statute.

5            There was a third subpoena served, and, as I said,

6   there was several motions for protective order and sanctions

7   that went back and forth between the Plaintiff and Defendant,

8   which I have not listed on here because that would just

9   needlessly complicate things.

10           Essentially, the Court, Judge O'Kelley, issued an

11  order in December saying that we were entirely justified in

12  not responding to the subpoenas.  And, as a result of that,

13  we then filed a motion for attorneys' fees because this case

14  ended up eating a lot more time than the normal search

15  situation.

16           In the interim, between the date that the

17  subpoenas were filed and the various motion practice on the

18  protective orders and other issues, Mr. Chintella had filed

19  for bankruptcy, Chapter 7.

20           We looked at the Court's order when it came out,

21  which is docket number 100, that the Judge had addressed

22  that, that he said it did not prevent him from ruling.

23           And so we proceeded.  Because we proceeded, there

24  was a gap in the Statute between Section -- or the Federal

25  Rule 54 says that it does not apply to Section 1927 motions.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  However, the Local Rule does not have that same language, and

2  so based on the fact that the Local Rule did not have the

3  same language, we went ahead and filed so we would not

4  necessarily lose our right to do so.

5        In light of the language from the Court that the

6  Court could proceed, we filed.  And believe that we were able

7  to file under the exception.  We took a look at a variety of

8  cases, including the *Stano* case, the *Burr* case, and the

9  *Alpern* case, all of which are cited in our papers.  I can go

10  through those if the Court would like.

11        THE COURT:  I'm familiar with those cases.

12        MR. ANDERSON:  Okay.

13        THE COURT:  Thank you.

14        MR. ANDERSON:  And, as a result of that, we

15  proceeded.  We offered Mr. Chintella an extension of time in

16  which to respond if he believed that the stay applied.  He

17  was concerned about possibly waiving some rights, and went

18  ahead and responded.

19        At that point, the District Court entered a new

20  order, basically said that we would have to come to this

21  Court and determine whether we were, in fact, exempt or that

22  the stay applied, and where things stood there.

23        So the very next day, we filed a motion for relief

24  from stay and annulment.

25        And I believe we filed on the 16th, and the Judge



1  entered his order on the 15th, I think it was.  Or he filed

2  on the 16th and we entered out -- entered his order on the

3  16th, we filed on the 17th, and then Mr. Chintella responded.

4        We believe that we do fall under the exception

5  under the *Pastano* case and those cases that have analyzed the

6  imposition of sanctions in ongoing court cases.  I mean, the

7  Bankruptcy Code in this case is not designed to protect a

8  debtor from bad conduct in other litigation, and, as I said,

9  we firmly believe that we're correct on that.

10        I would also mention, because we did not put it in

11  our papers, that *Hadid v. Alhagalan* (ph) case, which is out

12  of the Eastern District of Virginia, where they talk about

13  motions for sanctions against a defendant-debtor, are not

14  stayed based on 362(a).  And courts have generally accepted

15  this interpretation, and then it goes on to list *Alpern,*

16  *Berg,* the *Martin v. Todd* case, and a variety of other cases.

17        And the cite to that case is 2000 U.S.D.C. Lexis

18  2394.  That is at asterisk 7.

19            THE COURT:  All right.

20            MR. ANDERSON:  I can walk through the facts, but

21  it sounds like Your Honor is somewhat familiar with them.

22            THE COURT:  I have read the authorities that you

23  all have cited.  I've looked at the papers.  So I really want

24  to hear from Mr. Chintella, but then I have a couple of

25  questions.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          MR. ANDERSON:  Okay, so you'd like to hear from

2  Mr. Chintella?

3          THE COURT:  Yes, please.

4          MR. ANDERSON:  Okay.

5          THE COURT:  Unless there's something you don't

6  have in your papers that you really think I need to know.

7  But I'm pretty familiar with what the argument is, and

8  generally the time line for what happened.

9          MR. ANDERSON:  All right, thank you, Your Honor.

10         MR. CHINTELLA:  Good afternoon, Your Honor, my

11  name is Blair Chintella.  I'm here representing myself.

12         Just real quick, I wanted to clarify two things.

13         There has been some confusion in the District

14  Court docket.  This has been a fairly drawn out and long

15  case, and some of the motions, as you're aware, may be

16  confusing as having filed by the Plaintiff.

17         And in response to that, I have been confused

18  somewhat and my pleadings haven't been exactly clear.

19         But, it's my understanding that the motion that

20  they have filed only pertained to the August 8th subpoena.

21  The motion that we filed -- that I filed on behalf of my

22  client was for the July 25th subpoena.

23         There have been four subpoenas served on Comcast

24  in this case, and I listed them in my paperwork.  There is a

25  7/10 subpoena, a 7/15 subpoena, a 7/25 subpoena, and a 8/8



1   subpoena.   Those are the service dates of the subpoenas.

2          So, the sanctions motion we filed only -- has

3   attached to it the 7/25 subpoena, and the motion for

4   protective order that was filed by AF Holdings only had

5   attached to it the 8/8 subpoena.

6          So, I've had multiple conversations with an

7   attorney named Monica Mosley, who I understand is a

8   Pennsylvania attorney, and I have explained to her on the

9   phone that it was our understanding that Plaintiff's motion

10  only pertained to the 8/8 subpoena.   So that's why we filed a

11  motion for the 7/25 subpoena.

12          We were under an extremely tight deadline.   We had

13  two months of discovery.   If you've read about this case, the

14  substance of it, we're dealing with people who are hiding

15  assets, a lot of shell companies.   We tried to serve one of

16  the people down in Florida, but the house is vacant, the

17  water is shut off.

18          So we're trying to track down these people, so it

19  was crucial to get this information in the case, to try and

20  find out the addresses, so we can get a deposition, serve a

21  subpoena on these players who are responsible for this huge

22  case.

23          THE COURT:   And you understand I'm not ruling on

24  the sanctions motion?

25          MR. CHINTELLA:   Sure, sure.



1          THE COURT:  All I'm concerned with is whether the

2   1927 motion that was filed is within the 362(b)(4) exception.

3   That's all I'm dealing with today.

4          So, while I appreciate that there may be confusion

5   about what subpoena was being dealt with, --

6          MR. CHINTELLA:  Right.

7          THE COURT:  -- to the extent that the 1927 motion

8   is heard at some point, Judge O'Kelley is going to hear that,

9   not this Court.

10          MR. CHINTELLA:  Right.

11          THE COURT:  So, let's address the stay issue here,

12   if you would, please.

13          MR. CHINTELLA:  Right, right.  I just -- if the

14   relief is somehow connected with my intentions, that's the

15   only reason I was mentioning that, because one of the factors

16   that courts discuss is annulment of stay is bad faith of the

17   debtor.  So that's why I was discussing that, Your Honor.

18          But, you know, I do understand there are two

19   issues.  One is whether the stay even applies, or whether

20   their motion is an exception to it, and whether annulment is

21   warranted here.

22          On the first issue, you know, as we cite in our

23   briefs, you know, the exception that they're seeking to use

24   is for police and regulatory power.

25          And I'm going to start off by saying that, you



1    know, exceptions are supposed to be narrowly construed, and

2    the police or regulatory power in the cases we cite, you can

3    see it's aimed at like the general health and welfare of the

4    public at large.

5           So, you know, actions are injunctions under the

6    Fair Labor Standards Act, are included in -- I don't need to

7    repeat exactly what is written in the memorandum, but that's

8    the general gist of our argument.

9           THE COURT:  So the general gist of your argument

10   is that the (b)(4) exception doesn't apply to preserving and

11   protecting the judicial process from abusive litigation or

12   sanctionable conduct?  Is that the argument?

13          MR. CHINTELLA:  No, Your Honor.  I guess we would

14   -- we're not -- I wouldn't sit here and say that that's not a

15   public policy concern, I guess, or a way to -- you know,

16   because the Statute is aimed at curbing or effectuating some

17   policy, but so is everything else.  Every other rule out

18   there.

19          There are cases that, you know, we cited, where

20   there is a law that has been violated, but the Court

21   distinguishes that violation from one that is aimed at police

22   and regulatory function of the Courts -- or, excuse me, of

23   the exception, which goes broadly to general public welfare.

24          When you look at Section 28 U.S.C. 1927, you know,

25   true, it does have ancillary effect of that, but the primary



1  purpose, you know, is to give the party, you know,

2  compensation, you know, for their work.  It's strictly tied

3  to the number of hours, the excess costs created by the

4  action.

5       (Brief pause)

6            MR. CHINTELLA:  Your Honor, and in the case that

7  we -- I didn't get a chance to cite, you know, rushing to

8  draft these things, is *Brock v. Rusco Industries, Inc.*  It's

9  an 11th Circuit case, 842 F. 2d 270.

10           And there, you know, it cites Congressional

11 policy, and it gives an example.  It says "consequently,

12 Congress permitted a suit by the government 'to prevent or

13 stop violation of fraud, environmental protection, consumer

14 protection, safety, or similar police or regulatory laws.'"

15           So, here, the Secretary brought the suit to

16 protect legitimate business from unfair competition and to

17 force the federal law regarding minimum wage.

18           THE COURT:  How does this --

19           MR. CHINTELLA:  The Court in that case sought --

20 the secretary sought damages, just an injunction.

21           THE COURT:  All right.  I did look at your

22 pleading.  I will say I didn't see that -- the argument that

23 you're making to me today, which is that the primary purpose

24 of this Statute is pecuniary as to the individual, and that

25 this -- the sanctions motion is not the type of police and



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  regulatory power that (b)(4) goes to.

2          So, if you have other cases you want to cite to me

3  for that, I'm happy to look at them.  But I will tell you

4  that the question I really have, and I want you to address,

5  is --

6          MR. CHINTELLA:  Uh-huh.

7          THE COURT:  -- if you look at the *Alpern* opinion,

8  which is a Seventh Circuit opinion, or the *Berg* opinion,

9  which is a Ninth Circuit opinion, which obviously isn't

10  binding on this Court, but is persuasive authority.

11          Those deal with Rule 11 sanctions, deal with

12  discovery sanctions.  How do you distinguish the type of

13  sanctions that are sought under 1927 from the Rule 11 or the

14  discovery sanctions?  Aren't they the same thing?

15          MR. CHINTELLA:  I guess, no, I wouldn't argue that

16  all sanctions are created equal.  There are a variety of

17  policies behind different types of sanctions.  Now it's, you

18  know, it's not really an issue in this case, but I would

19  argue that even different types of sanctions under Rule 11

20  might be treated differently for purposes of the exception.

21          And Rule 11 provides a variety of sanctions, you

22  know, they can be customized, they can be monetary, they

23  could be fine.  You know, they could have been initiated by

24  the Movant, or they could have been initiated *sua sponte,*

25  which might change the effect under the exception.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1        Whether it's really aimed at vindicating the

2  Court's authority is significantly different than if it's

3  just pecuniarily to compensate somebody, you know.

4        You know, sanctions under 1927, the only sanctions

5  that can be imposed are payment of money to the moving party.

6  You know, indirectly, every type of sanction is going to have

7  some policy or reasoning behind it, and so I guess I would

8  ask the Court to draw that distinction, you know, with

9  Section 1927.

10        Other cases we cite -- or I cite in the brief, you

11  know, even contempt sanctions under certain circumstances are

12  stayed, or are not excepted from the automatic stay.

13        So, in those cases, you know, I cite, you can look

14  at whether it's truly a police or regulatory matter, you

15  know, public health, welfare, environmental protection, Fair

16  Labor Standards Act, and those kinds of things, versus, you

17  know, although it's a coercive sanction, you know, or a --

18  you know, a contempt sanction to compensate, you know, courts

19  have, you know, drawn that distinction even in the context of

20  just under Rule 11 specifically.

21        THE COURT:  Do you have cites for me in which

22  courts discuss the different purposes of Rule 11 and

23  distinguish them -- some that might be a (b)(4) action and

24  some that might not?

25        (Brief pause)



1          MR. CHINTELLA:  The only case we cite is the

2   *Donovan* case, and that -- it's a Northern District of Georgia

3   case, and that touches on just the broad -- how to interpret,

4   essentially, police or regulatory powers.  And that case

5   cites a multitude of cases.  That's 20 B.R. 997.

6          THE COURT:  Okay.

7          MR. CHINTELLA:  It's cites, you know, cases, you

8   know, the CFTC is able to access a debtor's books.  That was

9   not -- or that was an exception to the stay.  SEC trying to

10  obtain an injunction, cites a Fifth Circuit case on page 1002

11  of that case.

12         You know, honestly, I did spend a lot of time

13  trying to research these issues, because, you know, it takes

14  time away from, you know, trying to find work and

15  rehabilitate.  But, you know, there's not a lot of -- I

16  didn't find a lot of case law out there drawing that

17  distinction just in the context of Rule 11, but I did find

18  cases, you know, drawing that distinction, I guess, as far as

19  different types of sanctions, so it focuses more on the

20  minute, you know, specific rule.

21         THE COURT:  Which specific distinction are you

22  speaking about, drawing what distinction?

23         MR. CHINTELLA:  Oh, the *Jove* case is one.  That

24  case involves an order under Section 105.  Footnote 4, the

25  Court says "criminal contempt sanctions are punitive in



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  nature and are imposed to vindicate the authority of the

2  Court.  On the other hand, sanctions in civil contempt

3  proceedings may be employed for either or both of two

4  reasons, to coerce the defendant or to compensate.

5          And the last part was a paraphrase.

6          THE COURT:  So, it's your contention that 1927

7  sanctions are purely for compensation, they are not for

8  coercive purposes?  Is that the argument you're making?

9          MR. CHINTELLA:  No.  I believe that there is

10  authority in this Circuit saying that, you know, there is a

11  punitive aspect of those sanctions.

12          However, punitive, we would not -- or I would not

13  equate with police and regulatory power.  That's the

14  distinction I would draw on that point, Your Honor.

15          THE COURT:  Okay.

16          MR. CHINTELLA:  You know, there's another case

17  here.

18      (Brief pause)

19          MR. CHINTELLA:  If it's all right, Your Honor, I'd

20  like to -- I can continue searching, but maybe hear a

21  response and then I can find that case for you.

22          THE COURT:  Okay, that would be fine.

23      (Brief pause)

24          MR. ANDERSON:  Your Honor, you said you might have

25  some questions?



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          THE COURT:  That's really my big question:  What

2    do the cases you all have cited, I've looked at other

3    Eleventh Circuit authority that discusses the nature of

4    sanctions, including the *Amlong* case at 500 F. 3d 1230, in

5    which, at footnote 1, the majority talks about the dissent

6    having cited a case having to do with Rule 11 sanctions, and

7    the majority then contrasts that with 1927 sanctions.

8          And what they said, and I think what I'm going to

9    end up doing, is giving you folks a few days to give me

10   additional briefs on the particular distinction that counsel

11   is trying to draw.  But I want to read to you where I'm

12   coming from in terms of my analysis of the sanctions and why,

13   at least unless you can show me some other authority, I don't

14   see where there's a distinction that would take this outside

15   of the (b)(4) scenario.

16         That footnote says:  "While many of the same

17   general principles apply to sanctions under Rule 11 and

18   sanctions under 1927, Rule 11 and 1927 are distinct sources

19   of authority.  Rule 11 permits attorneys' fees for conduct

20   which merely fails to meet a reasonableness standard in

21   contrast to a court's inherent powers, which require a higher

22   showing.  It's clear that negligent conduct standing alone

23   will not support a finding of bad faith under Section 1927.

24   1927 is not a catch-all provision for sanction and

25   objectionable conduct by counsel.  For sanctions under 1927



1  to be appropriate, something more than a lack of merit is

2  required.  The Statute was designed to sanction attorneys who

3  willfully abuse the judicial process by conduct tantamount to

4  bad faith.  Bad faith is the touchstone.  Section 1927 is not

5  about mere negligence."

6          So, to me, that draws a distinction that says that

7  1927 sanctions are even more strictly construed and are even

8  -- go even more to protecting the judicial process, because

9  they are akin to the inherent authority of the court, which,

10  to me, says that they would absolutely be within the

11  exception of (b)(4), which has been held by the Ninth Circuit

12  and the Seventh Circuit to provide an exception to allow the

13  courts to protect the judicial process against foul manner of

14  litigation tactics that are detrimental to that process.

15          But, I want to give you the opportunity to respond

16  to that, and cite me cases or make arguments that would

17  indicate that that's an incorrect reading, because I did not

18  see -- neither party cited, nor did I see, a case that

19  directly addresses this issue.  So, I do want you all to have

20  a complete and full opportunity to make whatever arguments

21  you want to make.

22          But that's really from reading what has been filed

23  and from doing a little additional research.  Where I think

24  the issue is, is how is there really a principle distinction

25  between 1927 and Rule 11, or Appellate Rule 38, or the other



1    types of Rules where courts have found that (b)(4) does

2    apply.

3                Now, that doesn't say that if, hypothetically, I

4    say it's a (b)(4) exception, you can go back, Judge O'Kelley

5    can enter whatever order he thinks is appropriate.  That

6    doesn't mean that that is then collectible, that money

7    judgment, because (b)(4) also says that it's only as to other

8    than money judgments.

9                And the Second Circuit and the Fifth Circuit have

10   both confirmed that the Code says what it means, which is you

11   can get the judgment, but you can't go any further than that

12   without coming back to this Court.

13               So, if this is a (b)(4) exception, the motion

14   could go forward.  But any type of enforcement or collection

15   action would have to come back to this Court and consider how

16   that affects the bankruptcy case.

17               MR. ANDERSON:  Your Honor, we were aware of that.

18               THE COURT:  I'm just -- I want to set forth for

19   everybody what I'm thinking, because I do want you all to go

20   back in, say, about 10 days give me any relevant authority

21   you think that addresses this particular issue.

22               And it may be that you come back and you tell me

23   "we didn't really find cases that talk much about how they're

24   different, how they're alike."  But I want to give you --

25   give particularly the Debtor the opportunity to fully brief



1  the issue that I think is the one that matters.

2          And I've read the papers, I know all about the

3  automatic stay being a breathing spell.  It is clearly

4  fundamental to bankruptcy, but in this particular case and

5  this scenario, I think the issue is how or is there a way to

6  distinguish 1927 sanctions from sanctions that Appellate

7  Courts have already said are such that they fall within that

8  exception.

9          MR. CHINTELLA:  [indecipherable - not near

10  microphone].

11          THE COURT:  That's what you need to do, because

12  the ones that I have looked at that deal with sanctions and

13  protecting the judicial process, I'm not talking about EEOC,

14  I'm not talking about environmental clean-up, I'm talking

15  about sanctions in litigation to protect the court process,

16  with the exception of one case cited in the *Berg* case.

17          I'm not aware of any cases that go the other way,

18  but if they're there, I would love for you to present them to

19  the Court so that I can read both sides of the issue.

20          MR. CHINTELLA:  Your Honor, so, if I understand

21  correctly, you would like us to file a supplemental brief

22  within 10 days of today, so that would be the 14th, which I

23  think is next Friday?

24          THE COURT:  That is next Friday.

25          MR. CHINTELLA:  Okay.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          MR. ANDERSON:  Your Honor, I apologize for

2     intruding.  Would the Court -- would it make more sense to

3     the Court to have the Debtor file a brief so that -- because

4     I know that we have looked into this very issue that the

5     Court is raising, and --

6          THE COURT:  And if you all don't want to file

7     anything supplemental, that's fine.  If you think you've

8     given me everything that is relevant, then I'm happy to leave

9     it at that.  I'm giving both sides the opportunity, and

10    particularly I want to give Mr. Chintella the opportunity to

11    address this particular issue.

12         Now, you may then want to have a reply.

13         MR. ANDERSON:  That's what I was thinking, that it

14    might make more sense, because I know we've -- this is a

15    discussion that, you know, we had in filing the brief that we

16    filed.

17         But, and there's certainly -- I guess there's

18    another layer of research we can lay on top of what we've

19    already done and look to see if there is some authority that

20    would be helpful to the Court.

21         But I was thinking that perhaps, because Mr.

22    Chintella had said that, you know, he thinks he's got some

23    cases, perhaps we can, you know, flush those out and give us

24    a chance to respond.

25         So maybe five days for him and five days later for



1  us, or something like that, would be useful.

2          MR. CHINTELLA:  Your Honor, I'm not willing to

3  agree to that, but I'll do what the Court orders.  I'm not

4  going to give him [indecipherable - not near microphone].  If

5  they want to frame it that way and [indecipherable] I'd be

6  okay with that, Your Honor.  Both parties due in 10 days.

7          MR. ANDERSON:  You know, I really don't care what

8  we do, I'm just trying to make it easy for everybody.  It

9  doesn't make a bit of difference to me.

10          THE COURT:  And I appreciate that.  Both sides

11  have the opportunity to brief that issue, whether you do it

12  is up to both sides.  I told you where my thinking is.  You

13  kind of generally know what the Court thinks at this point.

14          I want to give both sides the opportunity to

15  present me to authority that I haven't yet seen, or perhaps

16  there are arguments that I haven't considered in conjunction

17  with how do you distinguish this particular type of

18  sanctions.  I'm going to give you both that opportunity, 10

19  days.

20          If one side doesn't file anything, I'll rely on

21  what has already been filed.

22          MR. ANDERSON:  So, Your Honor, it will be due

23  Friday the 14th?

24          THE COURT:  Yes.

25          MR. ANDERSON:  Okay.  All right.  Do you want us



1   to have it set back down for another hearing?

2           THE COURT:  No, what I want to do is I want to

3   look at what is submitted in writing, and if I think a

4   further hearing will be useful, I'll set that.

5           MR. ANDERSON:  Since the Court is asking for some

6   additional briefing in this case, could we ask that any

7   deadlines be stayed, because Mr. Chintella has also filed a

8   motion for sanctions for --

9           THE COURT:  And there -- generally with the --

10          MR. CHINTELLA:  [indecipherable - not near

11  microphone].

12          THE COURT:  Generally with the motion for

13  sanctions in the main case, unless the Local Rules

14  specifically require a reply, we generally don't require a

15  written reply.  But it does not make sense to deal with that

16  until after this threshold issue is addressed, because if it

17  is a (b)(4) issue, I think that resolves the motion for

18  sanctions.

19          MR. CHINTELLA:  Your Honor as far as the

20  [indecipherable] hearing, we would ask that -- can I ask that

21  that would be stayed.  Any initiation of -- my thought behind

22  that is that it may form or, I guess, alter Comcast's cases

23  that there is, in fact, a viable motion of the rule for

24  violation of stay potentially going out there, I mean, in

25  that case.  It was sort of a -- I believe that is transpired



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  in an order, just to save everybody some time and --

2  especially, I guess, because, you know, every time I'm

3  working on something in this matter, is time that we

4  [indecipherable].

5          THE COURT:  Has an answer been filed in that?

6          MR. CHINTELLA:  I filed a motion to dismiss.

7          THE COURT:  Okay.

8          MR. CHINTELLA:  You know, they are, I guess,

9  obligated to respond, so I'm okay with granting an extension

10  of that until we resolve this.

11          But I don't know, maybe Comcast can say whether

12  it's still proceeding with that despite a viable motion for

13  stay violation.

14          THE COURT:  So, isn't the adversary a

15  dischargeability action?

16          MR. ANDERSON:  Yes, Your Honor, it is.

17          THE COURT:  Okay.  And is it based on -- is it to

18  preserve any rights with respect to the 1927 motion?  Is that

19  what it was?  Frankly, I have not read the complaint.  I know

20  there is an adversary, but I have not read the complaint.

21          MR. ANDERSON:  Yes, Your Honor, to the extent that

22  we received any award, the way we read the Rules, we had to

23  go ahead and file the dischargeability sooner rather than

24  later because of where things are in the bankruptcy.

25          THE COURT:  Right.



1          MR. ANDERSON:  But if that -- if the Court is

2    going to stay that, because we understand that if Judge

3    O'Kelley were to make an award, we'd be back here in front of

4    Your Honor, we would agree to stay those things.

5          I know that he's filed a motion to dismiss the

6    non-dischargeability.

7          THE COURT:  Okay.  And, to me, it makes sense to

8    stay the matter.  First of all, I understand why you filed

9    when you filed, because there is a deadline.

10          MR. ANDERSON:  Yes, Your Honor.

11          THE COURT:  But, at this point, there hasn't been

12    any adjudication.  There are other moving parts, so let's do

13    this:  Let's stay the -- any proceedings in the adversary

14    proceeding, which would include any requirement to respond to

15    the motion to dismiss until -- I'm thinking 30 days after

16    ruling on the motion for relief and the motion -- the willful

17    violation motion.

18          Does that all sound workable to everybody?

19          MR. CHINTELLA:  Yes, Your Honor.

20          MR. ANDERSON:  Yes, Your Honor.  And then in the

21    actual bankruptcy case?

22          THE COURT:  That's the willful violation motion,

23    is the sanctions motion.  And that, I believe, is going to

24    rise or fall on the ruling that is currently under

25    consideration.



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1        MR. ANDERSON:  It could fall, but whether it

2   rises, I guess that --

3        THE COURT:  That would be correct.  Yes.  Mr.

4   Chintella, did you want to say something?

5        MR. CHINTELLA:  Just that I hope that I won't

6   fall.  I think that's just the way I would respond to that.

7        I think I'm more than happy to -- so far as the

8   three motions, just strictly to the issue, that one issue

9   which I also will give additional information as part of the

10  annulment.  How would the Court like me to visit that?

11  That's two issues, I guess.

12       THE COURT:  Right.  I think that I really just

13  want you to focus on the issue of the nature of the sanction

14  and how it would be distinguishable.

15       And if I then end up agreeing with you, if we need

16  to come back and take evidence as to whether an annulment is

17  appropriate or not, we can get there.  But I think this is

18  really the threshold legal issue, in my mind, and it doesn't

19  make sense to have an evidentiary hearing if it's going to be

20  resolved on a legal issue.

21       MR. CHINTELLA:  Fine.

22       THE COURT:  All right, so we will enter an order

23  in the adversary staying the proceeding until 30 days after a

24  ruling on this motion and the sanctions motion.

25       And you all will present within 10 days, by March



1  14th, supplemental briefing, if you choose.  There is no

2  requirement that you do that.

3            MR. CHINTELLA:  Your Honor?

4            THE COURT:  Yes, sir.

5            MR. CHINTELLA:  Are you referring to Judge

6  O'Kelley's potential sanctions?

7            THE COURT:  No, I'm referring to the motion for

8  sanctions for willful violation of the stay.

9            MR. CHINTELLA:  So both of those are stayed, that

10  and the adversary?

11            THE COURT:  Yes.  Well, yes.  That way there is no

12  response necessary for them, and we need to deal with this

13  issue first.  And then to the extent that there are matters

14  that need to be dealt with on the willful violation for stay

15  motion, we'll deal with it after a ruling on this matter.

16            So we're going to stay any response time until 30

17  days after the Court rules on this matter.

18            MR. ANDERSON:  Thank you, Your Honor.

19            THE COURT:  All right, thank you all.

20            THE COURT CLERK:  All rise, please.  This

21  concludes the afternoon calendar.

22                     (Time noted:  3:35 p.m.)

23

24

25



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1

2                                   <u>CERTIFICATE</u>

3

4

5          I, RANDEL RAISON, certify that the foregoing is a

6    correct transcript from the official electronic sound

7    recording of the proceedings in the above-entitled matter, to

8    the best of my ability.

9          

10   _____                    3/11/14

11   Randel Raison                                        Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com