**IT IS ORDERED as set forth below:**

**Date: June 20, 2014**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPCTY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| BLAIR B. CHINTELLA, | : | CASE NO. 13-73481 |
| | : | |
| Debtor. | : | CHAPTER 7 |
| _____ | : | |
| | : | |
| COMCAST CABLE COMMUNICATIONS | : | |
| MANAGEMENT, LLC, | : | |
| | : | |
| Movant, | : | |
| | : | CONTESTED MATTER |
| v. | : | |
| | : | |
| BLAIR B. CHINTELLA, | : | |
| | : | |
| Respondant. | : | |
| _____ | : | |

### ORDER DENYING PLAINTIFF'S MOTION FOR RELIEF
### FROM THE AUTOMATIC STAY AND ANNULMENT

This matter is before the Court on the Movant's "Motion for Relief from the Automatic

Stay and Annulment" and the Debtor's "Response to Comcast Cable Communications

Management, LLC's Motion for Relief from the Automatic Stay and Annulment." [Doc. Nos.

27, 30]. The Movant, Comcast Cable Communications Management, LLC ("Comcast"), seeks a determination that the automatic stay does not apply, pursuant to 11 U.S.C. § 362(b)(4), to proceedings on the Comcast's motion for sanctions (the "Sanctions Motion") against the Debtor under 28 U.S.C. § 1927 filed in an unrelated case pending in the District Court for the Northern District of Georgia. Comcast alternatively seeks annulment of the stay to allow for the continuation of proceedings on the Sanctions Motion in the District Court. The Court held a hearing on the matter on March 4, 2014 where it invited the parties to file supplemental briefs, which both parties subsequently filed. [Doc. Nos. 35, 36].

Motions for relief from or annulment of the automatic stay are core matters within the meaning of 28 U.S.C. § 157(b)(2). After carefully considering the parties' arguments, pleadings, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## A. FACTS

The Debtor in this case, Blair Chintella, is an attorney who represents the defendant in a copyright infringement suit in the District Court in the Northern District of Georgia, *AF Holdings v. Patel,* Case No. 2:12-cv-00262-WCO (hereinafter "*Patel*").[1] The case involved the alleged downloading of copyrighted material over peer-to-peer file sharing networks. District Court Order, *Patel D.C. Doc. No.* 90 at 3. Comcast, the Movant in this case, is not a party to the copyright suit. *Id.* at 9.

During the course of the copyright litigation, the Debtor served multiple third party subpoenas on Comcast seeking the personally identifiable information of certain Comcast subscribers. *Id.* at 9-10; Transcript of Hearing on Comcast's Motion for Relief from Stay and

---

[1] References to the Docket in the Patel case, as distinct from references to the docket in this case, will be preceded by "*Patel D.C. Doc. No.*" *E.g.*, *Patel D.C. Doc. No. #*.

2

Annulment, [Doc. No. 34 at 9]. Comcast attempted to comply with the subpoenas, but informed the Debtor that federal law required that it provide notice and time for objection to the affected subscribers prior to disclosure of the information. *Patel D.C. Doc. No.* 90 at 9; *see* 47 U.S.C. § 551. Additionally, Comcast informed the Debtor that it would delay its compliance with the subpoena until the resolution of related motions for protective orders, filed by parties seeking to prevent Comcast from revealing the personally identifiable information. *Patel D.C. Doc. No.* 90 at 9-10.

Debtor served the first such subpoena on Comcast, dated July 10, 2013. [Doc. No. 34 at 9]. Comcast complied with this subpoena after the court in that case resolved a motion for protective order. *Patel D.C. Doc. No.* 90 at 9; [Doc. No. 27 at 5]. The Debtor served another such subpoena on Comcast, dated July 25, 2013. [Doc. No. 34 at 9]. Comcast once again informed the Debtor that it would comply with the subpoena when the notice and objection period expired and when related motions for protected orders were resolved. *Patel D.C. Doc. No.* 72-1 at 1 (Exhibit A to Comcast's Response to Debtor's contempt motion).

Prior to the court resolving several objections to the second subpoena, on August 19, 2013, the Debtor brought a motion against Comcast, seeking to hold Comcast in civil contempt for not timely responding to the subpoena. *Patel D.C. Doc. No.* 63. Comcast opposed that motion. *Patel D.C. Doc. No.* 72. The court ultimately found that "Comcast's refusal to obey the subpoena [was] entirely justified." *Patel D.C. Doc. No.* 90 at 10. The court denied the Debtor's motion on December 18, 2013, refusing to sanction Comcast for attempting to satisfy its obligations under federal law. *Id.*

In the same order, the court additionally ordered the Debtor, as well as many other parties in the case, to show cause why they should not be sanctioned for various actions. *Id.*

3

Specifically, the court ordered the Debtor to show cause why his fees should not be adjusted downward for his "lack of familiarity with basic evidentiary and procedural rules" and to address alleged violations of the Georgia Rules of Professional Conduct. *Id.* at 20. A hearing was held on these matters on January 28, 2014. *Patel D.C. Doc. No.* 109.

The *Patel* court's order on the contempt proceedings and show cause hearing included a section entitled "Chintella's Bankruptcy Does Not Impact This Court's Jurisdiction," which stated that the court was a "governmental unit" and therefore free to determine whether the imposition of sanctions against the Debtor was appropriate, despite the Debtor's bankruptcy filing. *Patel D.C. Doc. No.* 90 at 22. This statement was made in reference to the sanctions that could potentially be imposed on the Debtor by the court at the show cause hearing. *See Patel D.C. Doc. No.* 101. Apparently relying on this language, Comcast filed the Sanctions Motion under 28 U.S.C. § 1927, which applies to an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *Patel D.C. Doc. No.* 93. The Sanctions Motion was filed after the court's show cause order, but before the related show cause hearing. *Patel D.C. Doc. Nos.* 90, 93, 109.

Comcast's motion alleged that the contempt proceedings initiated by the Debtor were "wholly unnecessary" and "had no basis." *Patel D.C. Doc. No.* 93 at 1. Alleging that the filing of the Debtor's motion was unreasonable and vexatious, Comcast asked for the related fees and costs allowed under § 1927. *Id.* On January 16, 2014, the *Patel* court issued an order providing the Debtor with clarification of the issues to be heard at the January 28 show cause hearing, specifically stating that the Sanctions Motion would not be heard. *Patel D.C. Doc. No.* 101 at 1. Further, the court noted that Comcast had not produced an order granting it relief from the automatic stay in the Debtor's bankruptcy case, concluding "it is inappropriate for the court to

4

allow a judicial proceeding against a debtor in an ongoing bankruptcy case." *Id.* at 2.  The next day, Comcast filed the present motion for relief from stay.  [Doc. No. 27 at 3].

**B. LAW**

The action Comcast seeks to pursue is for sanctions under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

For sanctions to be awarded under this provision, 1) an attorney must engage in unreasonable and vexatious conduct; 2) that conduct must multiply the proceedings; and 3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings.  *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997).  An attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of the statute when the conduct is "tantamount to bad faith."  *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991); *see also Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir.2003) ("Bad faith is the touchstone.").  The *Patel* court would have heard the Sanctions Motion had the Debtor not previously filed for bankruptcy.

When a debtor files a bankruptcy petition, the Bankruptcy Code provides for an automatic stay of most actions against the debtor or property of the estate.  This includes a stay of "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1).  The purpose of the stay is to "give the debtors 'breathing room' after filing their petition." *B.F. Goodrich Emps. Fed. Credit*

5

*Union v. Patterson (In re Patterson),* 967 F.2d 505, 512 n. 9 (11th Cir.1992). The automatic stay is considered "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't. of Environmental Protection,* 474 U.S. 494, 503, 106 S.Ct. 755, 761 (1986) (quoting S.REP. NO. 989, 95th Cong., 2d Sess. 54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840; H.R.REP. NO. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in*1978 U.S.C.C.A.N. 5963, 6296).

**Exception under § 362(b)(4)**

The scope of the automatic stay is broad.  However, the Code provides for certain statutory exceptions that prevent the operation of the automatic stay in limited circumstances.  11 U.S.C. § 362(b).  Movant argues that, pursuant to 11 U.S.C. § 362(b)(4),  the automatic stay does not apply to the filing of, and prosecution of, the Sanctions Motion.  Section 362(b)(4) provides:

> **(b)** The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
>
> **(4)** under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit. . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

Inquiry under this section thus requires a court to determine whether the action in question is undertaken by a governmental unit and whether it is an action enforcing that unit's police or regulatory powers.  *See In re Nortel Networks, Inc.*, 669 F.3d 128 (3d Cir. 2011) (finding the relevant inquiry to include both analysis of whether the entities were "governmental units" and whether the action was within police or regulatory power); *U.S. ex rel. Doe v. X, Inc.*, 246 B.R. 817, 818 (E.D. Va. 2000) (analyzing a qui tam action by first examining whether the law

6

was exercise of police or regulatory power, then whether the action was brought by a "governmental unit").

Under the Bankruptcy Code, "[t]he term 'governmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27).  The legislative history of this section indicates that the key to the determination is whether the department, agency or instrumentality carries out a governmental function.  *See* H.R. REP. NO.95–595, 95th Cong., 1st Sess. 311 (1977), *reprinted* in 1978 U.S.C.C.A.N. 1978, 6268.  Entities that operate through state action such as through the grant of a charter or license, and have no further connection with the state or federal government are not within the contemplation of the definition.  *Id.*

Comcast argues that the sanctions proceedings will be effectuated by a governmental unit, despite being brought by a private party, because the sanctions will be imposed by the court.  Plaintiff relies on a case decided by the Seventh Circuit Court of Appeals, *Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993).  In that case, in which a private party brought a motion for sanctions under Rule 11, the court stated:

> The Rule 11 sanction is meted out by a governmental unit, the court, though typically sought by a private individual or organization-a nongovernmental litigant, the opponent of the litigant to be sanctioned. There is no anomaly, given the long history of private enforcement of penal and regulatory law. The private enforcer, sometimes called a "private attorney general," can be viewed as an agent of the "governmental unit," the federal judiciary, that promulgated Rule 11 in order to punish unprofessional behavior.

7

*Id.* at 690.  Other courts, relying on this rationale, have extended the "governmental unit" exception to sanctions under other procedural provisions.  *See Sabre Grp., Inc. v. European Am. Travel, Inc.*, 192 F.3d 126 (5th Cir. 1999) (sanctions under Fed. R. Civ. P. 16(f)); *Berg v. Good Samaritan Hosp.* (*In re Berg*)*,* 198 B.R. 557, 559-63 (BAP 9th Cir.1996), *aff'd*, 230 F.3d 1165 (9th Cir. 2000) (sanctions under Fed. R. App. P. 38).

A court entering a show cause order or imposing sanctions on its own volition, rather than at the behest of a litigant, acts a governmental unit in sanctioning parties.  Indeed, the cases cited in *Alpern* involved actions either initiated or continued by a court or a state bar association, both of which satisfy the definition of governmental unit in 11 U.S.C. § 101(27).  *Papadakis v. Zelis,* 230 Cal.App.3d 1385 (1991) (sanctions imposed by court after show cause hearing falls within police power exception); *O'Brien v. Fischel,* 74 B.R. 546, 550 (D.Haw.1987) (Rule 11 hearing initiated by court was exercise of police power); *Wade v. State Bar of Arizona,* 948 F.2d 1122 (9th Cir.1991) (disciplinary proceedings initiated by the state bar fell into police power exception) (per curiam).  Many of the cases later relying on the rationale in *Alpern* involve courts acting sua sponte, not on the motion of an individual.  *See, e.g.*, *Berg*, 230 F.3d at 1167 (noting that a sua sponte sanction case was stronger evidence of government action than that in *Alpern*); *Sabre Grp., Inc.*, 192 F.3d at 126.

It is less clear that a private party asking a court to award sanctions is acting as a governmental unit, rather than a private party seeking to vindicate private rights.  Whether an individual seeking to initiate or continue sanctions proceedings can satisfy the governmental unit aspect of section 362(b)(4) need not be determined, however, because the Court concludes that the sanctions proceedings here are not undertaken in exercise or for enforcement of the court's police or regulatory powers.

8

For the sanctions proceedings to be shielded from operation of the automatic stay, they must be an operation of the governmental unit's police or regulatory powers. The Eleventh Circuit has not articulated a test for determining what actions fall within this "police power" exception for purposes of section 362. Most courts apply two "related, and somewhat overlapping" tests: the pecuniary purpose test and the public policy test. *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1108 (9th Cir.2005); *see e.g.*, *McMullen v. Sevigny* (*In re McMullen*)*,* 386 F.3d 320, 325 (1st Cir. 2004); *Commonwealth of Mass. v. First Alliance Mortg. Co.* (*In re First Alliance Mortg. Co.*), 263 B.R. 99, 107 (B.A.P. 9th Cir. 2001); *Eddleman v. United States Dep't of Labor,* 923 F.2d 782, 791 (10th Cir.1991); *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986); *State of Mo. V. U.S. Bankruptcy Court for E.D. of Arkansas* (*In re State of Missouri*)*,* 647 F.2d 768, 776 (8th Cir.1981).

The pecuniary purpose test stems from the legislative history of § 362(b)(4). Legislators enacting the section noted that it was "intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 CONG. REC. H 11,089 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6436, 6444-45 (Remarks of Rep. Don Edwards); 124 CONG. REC. S 17,406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6505, 6513 (Remarks of Sen. Dennis DeConcini). "Where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." S. REP. 95-989 (1978), 52, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838. Thus, under this test courts ask whether the governmental action relates to matters of public safety and welfare, excepting the action from

the stay, or instead relates to the protection of a pecuniary interest in the debtor's property, which would not be excepted from the stay.

The public policy test distinguishes between proceedings that effectuate public policy and those that adjudicate private rights, the former being excepted from the automatic stay. *Edward Cooper Painting*, 804 F.2d at 942. This test is not satisfied if an action "is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public." *Lockyer*, 398 F.3d at 1109. Even when the action in question tangentially serves a broader public interest, if the action more fundamentally adjudicates private rights, "courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-a-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities." *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 390 (6th Cir. 2001).

Analysis of the governmental action in question should also comport with the purpose of the section. Section 362(b)(4) "discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare (*e.g.*, environmental and/or consumer protection regulations)." *McMullen,* 386 F.3d at 324–25 (citing *In re First Alliance Mortg. Co.,* 263 B.R. 99, 107 (B.A.P. 9th Cir.2001) (noting that fundamental policy of § 362(b)(4) is to "prevent [ ] the bankruptcy court from becoming a haven for wrongdoers" (internal quotation marks and citation omitted))); *see also United States v. Nicolet, Inc.,* 857 F.2d 202, 207 (3d Cir.1988) ("To combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers, among others, Congress enacted the police and regulatory power exception to the automatic

stay."); 3 COLLIER ON BANKRUPTCY ¶ 362.05[5][b][i] (discussing cases applying this exception in "state bar disciplinary proceedings, employment discrimination actions, labor law enforcement proceedings, rent regulation enforcement, the enforcement of the minimum wage laws and enforcement of water quality control standards").  The section is most frequently invoked by regulatory bodies exercising their authority over matters of public health and welfare.

Comcast relies on a line of cases holding that certain sanctions, including those under Rules 11 and 16(f) of the Federal Rules of Civil Procedure, are excepted from the stay under § 362(b)(4).  These courts view court-imposed sanctions as governmental action necessary to police the behavior of litigants appearing before the court.  Although the sanctions in these cases typically consist of monetary awards to private parties that seem to have an entirely pecuniary purpose, these courts conclude "the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interest."  *Berg*, 230 F.3d at 1168 (citing *O'Brien v. Fischel,* 74 B.R. at 550).  Comcast suggests that these cases stand for the broader proposition that all actions for sanctions are excepted from the stay.

An entirely pecuniary sanction may be and, as pointed out by the *Alpern* court, is *often* the result of a proceeding for sanctions under Rule 11.  11 F.3d at 690.  But it is not the *only* possible result.  Sanctions under Rule 11 "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).  A court considering a motion for sanctions under Rule 11, therefore may impose an appropriate monetary or nonmonetary sanction, provided that it is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  *Id.*  Similarly, under Fed. Rs. Civ.

P. 16(f) and 37(d), which address sanctions for violations of pretrial scheduling and discovery orders, courts may impose appropriate nonmonetary sanctions and additionally may impose fees and costs on a party "instead of or in addition to" other available nonmonetary sanctions.

In contrast, section 1927 contemplates the imposition of an entirely pecuniary sanction; the only possible relief under that section is an award of "excess costs, expenses, and attorneys' fees." 28 U.S.C. § 1927. Indeed, the Eleventh Circuit Court has required that sanctions awarded under this provision must bear a "financial nexus to the excess proceedings" and may not exceed the costs, expenses, and fees reasonably incurred due to the unreasonable conduct. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). The provision is therefore "not a 'catch-all' provision for sanctioning objectionable conduct by counsel," but rather a mechanism that allows the court to compensate parties for fees and costs attributable to the particularly egregious conduct of another party. *Id.*

Though sanctions under § 1927 involve pecuniary interests of the Debtor, Comcast argues that they nonetheless effectuate the broader public purpose of deterring frivolous litigation and abusive practices by attorneys. While sanctions under this section may have a deterrent effect, the fact that the sanctions are directly linked to the actual expenses and fees of the party seeking the award suggests the purpose of the provision is more to recompense than to deter. Comcast further argues that § 1927 sanctions further the "policy of preventing the bankruptcy court from becoming a haven for wrongdoers." [Doc. No. 35 at 4] (citing *O'Brien v. Fischel*, 74 B.R. 546, 551 (D. Haw. 1987)). Without allowing such sanctions, the argument continues, litigants would be able to use the automatic stay as a sword rather than a shield by engaging in abusive or dilatory conduct, knowing that the stay would prevent related sanctions.

This argument is overstated, however, because it ignores the fact that a court is able to sanction litigants pursuant to its inherent power or other available statutes, including Rule 11.

Federal courts have the inherent power to impose sanctions on parties and lawyers. *In re Walker,* 532 F.3d 1304, 1309 (11th Cir.2008). The availability of sanctions under § 1927 does not limit a court's ability to sanction a plaintiff under this power as the inherent power of a court "can be invoked even if procedural rules exist which sanction the same conduct." *Spolter v. Suntrust Bank*, 403 F. App'x 387, 390 (11th Cir. 2010) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49, 111 S.Ct. 2123 (1991)). As Comcast points out, the power of the court to impose sanctions under 28 U.S.C. § 1927 is similar to the court's inherent power to sanction a party. Indeed, the standard for imposing sanctions under a court's inherent powers is similar to that under section 1927. *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) ("When considering sanctions under the court's inherent power, the threshold of bad faith conduct 'is at least as high as the threshold of bad faith conduct for sanctions under§ 1927.'" (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1252 (11th Cir. 2007))). Thus, the court is able to award the fees requested in the Sanctions Motion without relying on § 1927 and the argument that sanctions under § 1927 serve the broader public interest of deterrence, without which parties in bankruptcy would be free to engage in sanctionable conduct, is without merit.

Exceptions to the automatic stay are to be construed narrowly. *In re Allied Mech. Servs., Inc.*, 38 B.R. 959, 962 (Bankr. N.D. Ga. 1984) ("[T]he exceptions to the automatic stay, including § 362(b)(4), are to be narrowly construed."). Even were this Court to accept the broader proposition that actions seeking sanctions are imposed as an exercise of a court's police power that serve to deter dilatory conduct, the Court concludes that the present motion does not serve such a purpose. The behavior of the Debtor throughout the *Patel* case was questionable

enough for the district court to issue a show cause order *before* Comcast filed its Sanctions Motion.  This order included the court's conclusion that the automatic stay did not prevent it from imposing sanctions on the Debtor.  The court subsequently held a hearing on the matter.  If the conduct detailed in the Sanctions Motion were egregious enough to warrant such sanctions, the *Patel* court could have imposed them at that hearing.  The Sanctions Motion therefore serves only the interests of a private party seeking to reach the pecuniary interests of the Debtor.  As such, the action is not within the scope of the exception of § 362(b)(4).

**Annulment**

Because section 362(b)(4) does not apply to the Sanctions Motion, the action is in violation of the automatic stay.  In addition to the exceptions to the automatic stay enumerated in § 362(b), the Code also provides that a court may grant relief from the stay, "by terminating, annulling, modifying, or conditioning such stay," on "request of a party in interest ... for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).  The section provides no definition for "cause," nor is a definition located elsewhere in the Bankruptcy Code, leaving courts to evaluate what constitutes cause on a case-by-case basis.

In the Eleventh Circuit, transactions or occurrences made in violation of the automatic stay of § 362(a) are void, but may be validated through annulment of the stay pursuant to § 362(d).  *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 675 (11th Cir.1984).  An annulment operates retroactively to validate actions taken after the petition for bankruptcy was filed.  *In re Williford*, 294 F. App'x 518, 521 (11th Cir. 2008).  While the Eleventh Circuit has not announced a test for annulment, it has noted that bankruptcy courts should grant

14

annulment of the stay "in appropriately *limited* circumstances," considering that the "important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *Albany Partners,* 749 F.2d at 675.

Courts use varying tests when determining whether an annulment of the stay is appropriate for a given action. Some courts require that a movant present unusual or extreme circumstances for annulment while others engage in a balancing of the equities. *See Howard v. Rockfield County (In re Howard)*, 391 B.R. 511, 518 (Bankr. N.D. Ga. 2008) (Bonapfel, P) (discussing the two tests). Courts that engage in the balancing test consider multiple factors, including the movant's awareness of the bankruptcy case, unreasonable or inequitable conduct of the debtor, whether the affected property is necessary for the debtor's fresh start, whether the court would have granted a motion for relief from stay had it been filed prior to the stay violation, and whether the failure to grant retroactive relief will cause unnecessary expense to the creditor. *Id.*

The Court has not been provided adequate evidence to determine whether Comcast's request for annulment should be granted based on the foregoing factors.

Accordingly, it is hereby

**ORDERED** that the Movant's Motion for Relief from Stay as excepted by 11 U.S.C. § 362(b)(4) is **DENIED** and further **ORDERED** that the Movant's request for annulment of the automatic stay is set for hearing on **September 11, 2014 at 10:00 a.m.** in Courtroom **1402**, Richard B. Russell Federal Building, 75 Spring Street, S.W., Atlanta, GA 30303.

**[End of Order]**