IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| In re: Blair Chintella, debtor | * |
| No employer | * **Chapter 7** |
| xxx-xx-0549 | * **13-73481-bem** |
|  | * |
| Trustee: | * |
| Robert Trauner | * |

**Debtor's Motion for Reconsideration or Amendment of Findings of Fact and/or Conclusions of Law**

COMES NOW, Blair Chintella ("Debtor"), filing his Debtor's Motion for Reconsideration or Amendment of Findings of Fact and/or Conclusions of Law, showing the Court as follows:

**Introduction**

Comcast filed a motion ("Motion for Relief") seeking a determination that the automatic stay did not apply to a 28 U.S.C. §1927 sanctions motion that it filed against Debtor in his client's case ("Sanctions Motion"), or alternatively, arguing that annulment of the stay was warranted.  The Court held a hearing on March 4, 2014 and, after candid discussion with the parties as to the thrust of their arguments, permitted both parties to file supplemental briefs regarding the first issue whether the automatic stay applies to the Sanctions Motion.

1

The parties filed supplemental briefs and on June 20, 2014 the Court issued an order thereon and scheduled a hearing regarding the second issue – whether annulment of the stay was warranted.  ECF #44.  In the Court's order it made several findings of fact and conclusions of law pursuant to Bankr. R. Civ. P. 7052, several items of which Debtor seeks clarification or amendment regarding.

### Argument and Citation to Authority

Pursuant to Fed. R. Civ. P. Rule 52 as incorporated by Bankr. R. 7052, Debtor requests the following.

**1.     Compliance with the 7/25 Subpoena**

The first full sentence on page three (3) of the Court's order states that Comcast "attempted to comply with the subpoenas."

Request for clarification:  Does this language of the District Court's order (ECF #90) referring to the 7/10 and 7/15 subpoenas?

Paragraph two (2) of the same page states "Comcast . . . informed Debtor that it would comply with the subpoena [singular] when the notice and objection period expired and when related motions for protective orders were resolved." *Id*, ¶ 2.

Request for clarification:  Does this language from the District Court refer to the 7/25 Subpoena and only the 7/25 Subpoena?  Patel Case ECF #72-1 (filed by

Comcast) is cited immediately following this language yet this filing is merely an e-mail from Monica Mosley[1] to Debtor that the plural "your subpoenas" and does not specify the 7/25 Subpoena. In essence, it was Comcast's position in that e-mail that multiple subpoenas were encompassed yet, as argued in Debtor's bankruptcy case by Debtor, the 7/25 Subpoena was not attached by AF Holdings, LLC? This could inform a determination that was arguably resolved or should be resolved by the District Court and could impact Mr. Patel's case.

Debtor is currently in the process of reviewing the docket in the Patel case and will likely file several filings (on behalf of himself and Mr. Patel) regarding the scope of the motions filed by AF Holdings, LLC as they relate to the subpoenas served on Comcast among other issues.

### 3.   "The Second Subpoena"

Page 3 (second full paragraph) refers to "several objections to the second subpoena" and that "Debtor brought a motion against Comcast" for not "timely responding to the subpoena." As argued in filings in his bankruptcy case, the "second" subpoena was the 7/15 Subpoena, not the 7/25 Subpoena that the motions for contempt filed against Comcast in the Patel Case pertained to.

The Court cites Mr. Patel's motion filed against Comcast following this

---

[1] A Comcast attorney apparently in Pennsylvania.

language yet this language did not reference a "second" subpoena and the only subpoena attached to the motion was the 7/25 Subpoena (i.e. the third subpoena). *See* Patel Case ECF #63-1. Again, a determination that the 7/25 Subpoena was the "second" subpoena served on Comcast could have a detrimental effect on Mr. Patel's case and bleed over into Debtor's bankruptcy case as well, further compounding matters. As alluded to above, Debtor on behalf of himself and his client is preparing filings for the District Court to hopefully resolve these issues. If there are issues of *collateral estoppel* that come into play here Debtor argues that he has not had a full opportunity to address such issues in his bankruptcy case.

    **4.**    **Order to Show Cause**

On December 18, 2013, the District Court in the Patel case issued its order to show cause regarding multiple issues. Patel Case ECF #90. On page four (4) of this Court's June 20, 2014 order it stated that this order sought to impose sanctions regarding a "lack of familiarity with basic evidentiary and procedural rules" as well as "alleged violations of the Georgia Rules of Professional Conduct."

Request for clarification/amendment: Debtor has re-reviewed the District Court's order to show cause (ECF #90). It was Debtor's initial understanding that Debtor was *indeed* required to show cause regarding these two issues, however, his understanding was that, regarding the "evidentiary and procedural" rules show

4

cause issue, the Court wanted to assess whether to reduce attorney's fees already granted. The District Court awarded attorney's fees in ECF #90 ruling that Plaintiff and counsel for Plaintiff Jacques Nazaire were jointly and several liable for some and stated that an amount would be determined at a hearing. In essence, it was Debtor's understanding that any "downward" adjustment of his fees was not springing from any "sanctions" *per se*, but rather from the standard procedure whereby an attorney must prove their fees subject to possible downward adjustment based on several common factors such as "degree" of success, reasonable hour rate, duplicative work, etc.

To be candid and after re-reviewing the District Court's order, on page two (2) i states as follows:

> This hearing will allow the parties to attempt to justify their conduct and explain why their behavior does not merit sanctions under Rule 11, Rule 37(d), 28 U.S.C. § 1927, and/or the court's inherent authority.

Debtor's possible misunderstanding was reasonable and he as well as Mr. Patel will likely seek clarification or make filings regarding this. For example, regarding the issues that Jacques Nazaire was charged to show cause regarding, the District Court described the basis for the show cause order as follows:

1) "Whether Nazaire violated Local Rule 3.3 . . .

2) "Whether Nazaire violated Local Rule 3.3 . . .

3) "Whether Nazaire violated his obligations to the court under Fed. R. Civ. P. 11 and other applicable rules . . ."

4) "Whether Nazaire . . . *See* Fed. R. Civ. P. 11(b)(1-4).

In short, on page three (3) of the Court's opinion it cites multiples sanctioning authorities: "Rule 11, Rule 37(d), 28 U.S.C. § 1927, and/or the court's inherent authority," yet on the specific issues to show cause (regarding Nazaire) specific sanctioning authorities are listed for each item. The sole exception is item #3 which also states "and other applicable rules."

Regarding the show cause issues pertaining to Debtor, they were not enumerated but Debtor will outline them in turn:

1) "plaintiff contends that Chintella violated Georgia Rule of Professional Conduct 1.7(a)and 1.8(f) by soliciting third-party funds to pay for litigation. Chintella should be prepared to address this accusation.

There is no mention a specific sanctioning authority merely that "Chintella should be prepared to address this accusation." Debtor construed – perhaps improperly – as pertaining to sanctions under the Court's inherent authority. However, perhaps Debtor should have construed the omission of a specific sanctioning authority as implicitly incorporating all of the sanctioning authorities listed on page three (3) of the Court's order? This is another issue that Debtor (and perhaps Patel) will seek to address in the District Court.

6

    2) "Additionally, Chintella's conduct during the litigation demonstrates a lack of familiarity with basic evidentiary and procedural rules. The court is reluctant to fully reimburse a party when the party's inability to effectively litigate a matter drove up the bill. If the court opts to sanction plaintiff and plaintiff's attorney by awarding attorney's fees, Chintella should explain why his attorney's fees should not be adjusted downwards."

Patel Case ECF #90, page 21. As mentioned above, Debtor construed this as requiring show cause as to why any sanctions for "attorney's fees" imposed on Plaintiff "should not be adjusted downwards" under the traditional for determining the proper amount of fees when the "lodestar" method warrants adjusting downwards. Indeed, the Court awarded sanctions (postponing ruling on the specific amount) until after the hearing. There is nothing in this language that lead Debtor to believe that the source for any "downward adjustments" were sanctions under Rule 11, 28 U.S.C. § 1927[2] and/or the Court's inherent authority, at least this was Debtor's understanding…

    Notably, the order to show cause also did not list Mr. Patel as a person required to show cause on any issue, but it did list AF Holdings, LLC (ECF #90, page 20). Enumerated item #1 references motions (ECF #16 & 76 – motions filed by Mr. Patel) as the basis for the sanctions but items #2-4 do not list a sanctioning

---

[2] Of course, 28 U.S.C. § 1927 specifically addresses sanctions for/against, to Debtor's best understanding, it does not specify a method by which to offset or "adjust downwards" sanctions already imposed.

7

authority.  Presumably the basis for these sanctions were the multiple sanctioning authorities listed on page three (3) of the Court's order is what Mr. Patel and Debtor hopes to address as well.

5. **"Imposed on Debtor"**

Page four (4) of this Court's June 20, 2014 order found that the District Court's order as referencing "sanctions that could potentially be imposed on the Debtor by the court at the show cause hearing."  As discussed above, Debtor seeks clarification or amendment of this finding to address the uncertainty that he perceives regarding the basis for any sanctions and/or whether sanctions (as opposed to downward adjustment to "lodestar" fees) formed the basis.  Debtor is preparing to seek clarification regarding this and the other issues and asks this Court to clarify.

6. **"would have heard the Sanctions Motion"**

On page five (5) of the Court's June 20, 2014 order it found that "The *Patel* court would have heard the Sanctions Motion had the debtor not previously filed for bankruptcy."  Debtor seeks clarification as to whether this means that the *Patel* Court would have heard Comcast's Sanctions Motion except for the existence of the automatic stay?  In other words, it is Debtor's understanding that the District Court's order (ECF #90) was issued before Comcast filed its sanctions motion and

therefore it cannot be presumed that it would have been proper (or even more so that the Court ordered) for Comcast to attend the un-related hearing.  This is significant because Comcast has argued that it did not threaten to attend the un-related show cause hearing, a contention that is contradicted by a filing made by Comcast in the Patel Case and other correspondence.  Debtor's understanding is that the show cause hearing did not encompass Comcast's Sanctions Motion in any way primarily because it was issued *before* Comcast filed their motion, but also because the District Court at Patel Docket #101, page 1, explicitly stated that Comcast's motion would not be heard at the hearing.  Debtor seeks clarification primarily because Comcast has argued in filings with this Court that it's mistaken reliance the District Court's order was reasonable, and informing this "reasonableness" argument is whether the show cause hearing in any way pertained to Comcast's Sanctions Motion.  Debtor and on behalf of his client Mr. Patel is preparing paperwork to hopefully address this issue as well.

On page fourteen (14) of the Court's June 20, 2014 order the Court stated that "the Patel court could have imposed them" referring to the sanctions sought in Comcast's Sanctions Motion.  Debtor seeks clarification regarding this statement for the above reason, namely, in determining whether the show cause hearing in any way pertained to Comcast's motion.  Essentially, Debtor seeks clarification as

to whether the District Court "could have" addressed Comcast's motion at the show cause hearing – i.e. the show cause hearing encompassed its motion – or whether this simply means that *had the* District Court issued another order to show cause regarding Debtor and Comcast, sanctions "could have" been imposed at a hearing on that order, perhaps even the same hearing *had the* District Court ordered such to take place.  It is Debtor's understanding that both orders from the District Court (ECF #90 and 101) made clear that the show cause hearing in no way pertained to Comcast's Sanctions Motion.

### 7. Upcoming Hearing in Debtor's Bankruptcy Case

On pages 13-14 the Court's June 20, 104 order, it outlines two tests used by Courts to determine whether to grant annulment to the automatic stay.  The order also states that "based on the foregoing factors" the parties are to attend a hearing on the matter.  Debtor seeks clarification as to whether the Court has adopted the "pecuniary purpose" test or the "policy" test in order to prepare using the relevant case law, depending on which test the Court adopted.  If the Court adopted neither test Debtor can obviously prepare using both lines of case law as they apply to this matter – and also be prepared to argue as to why one test is preferred over the other.

### 8. Mr. Patel's Case

Debtor intends enter filings in Mr. Patel's case regarding these and other related and un-related issues in the near future, actually, as soon as possible. In Mr. Patel's case both Debtor and Comcast make conflicting assertions regarding the scope of the motions filed by AF Holdings, LLC as they relate to Debtor's bankruptcy case. For example, Comcast states in a filing with this Court that it has already complied with the 7/25 Subpoena (on 12/31/2013). ECF #27, footnote #2: "Comcast responded to the July 25, 2014 Subpoena on December 31, 2013." This subpoena was *not* attached to either of AF Holdings, LLC's motions, but the 8/8 Subpoena was. However, at ECF #27, footnote #2 Comcast also asserts that the 8/8 Subpoena was quashed. Comcast asserts this despite the District DENYING a motion by AF Holdings, LLC to quash the subpoena ruling that it lacked standing (order at ECF #90 and underlying motion at #60 in Patel Case). However, the Court then GRANTED (ECF #90, page 8) a motion filed by AF Holdings, LLC (ECF #68) that had attached to it the same 8/8 Subpoena. In other words, Comcast argues that both of AF Holdings, LLC's motions pertained to the 7/25 Subpoena – yet one was denied for lack of standing and the other was granted. In the same vein, however, Comcast argues that it no longer needs to comply with the 8/8 Subpoena even though it was attached to both motions that were simultaneously denied/granted.

Debtor also seeks clarification as to whether the District Court's ECF #90 order has issue preclusive affect holding that the automatic stay applies to Comcast's motion.

Needless to say, Debtor seeks clarification from the Court on these important issues not only as they affect his bankruptcy case but also as they potentially affect his client's case, Mr. Patel.  Debtor is in the process – time willing – to file materials with the District as soon as possible to hopefully resolve these issues.

Debtor seeks clarification regarding the above findings of fact and also whether any issue preclusive rules are in play here…Obviously if they are, Debtor will likely file material in his client's case to protect his rights as, as fate may have it, it appears that the issues in that case are being harnessed against him.

## Conclusion

Debtor is *extremely* mindful of his obligations of professionalism and does not file this motion lightly.  Debtor does not want to prolong this matter any longer than necessary and would *jump* at the opportunity if Comcast were to agree to a an *in pari* dismissal/withdrawal of all sanctions/adversary-related matters.  Until that happens, Debtor is attempting to protect himself as well as his client.  The last thing that Debtor wants is a particular finding of fact or conclusion of law harming

his client (on the flip side).

Debtor hopes to resolve this matter as efficiently as possible.  As proof of this, another issue has arisen that further complicates matters.  Debtor obtained an extension of time to file his 2013 tax returns because of the uncertain nature of his "income" as he understands it.  For instance, if fees are awarded to Debtor in the Patel Case a portion of them would be considered income for 2013 and possibly a portion for 2014.  Debtor was hoping that this matter would be resolved before October, the new tax-filing deadline, but since a hearing is scheduled in September and the Patel Court has not yet re-scheduled a hearing,[3] it is uncertain whether all of this will be resolved prior to that time.

Debtor respectfully requests that the Court enter an order clarifying its findings and/or amend its findings with respect to the above issues.

Respectfully submitted July 7, 2014:

                                                    _____*/s/ Blair Chintella*_____
Blair Chintella
2483 Shoals Ter.
Decatur, GA 30034
404-931-2090

---

[3] The January 2014 hearing was actually postponed because of the huge snow storm, so technically it was not concluded, which could also impact this Court's rulings…

13

No fax.
bchintel1@gmail.com

14